Next case called for oral argument is in re The Marriage of Litton. May it please the Court, Counsel, my name is Sharon Shanahan and I represent Gayla Litton. This appeal arises out of a dissolution of marriage and the trial court's decision to award custody of the two children, Lexi and Nikki, to their father. Ever since the days of Solomon, judges have been placed in a position where they must decide which of two people love a child best. Two women appeared before Solomon, each claiming to be the mother of the baby. Solomon decreed that the baby should be cut in half and half given to each woman. One of the women said, all right, he'll be neither mine nor yours, dividing between us. But the other woman, the woman that really loved the child, said, ask Solomon to stay his hand and rather than kill the baby, ask Solomon to give the baby to the other child. Solomon gave the baby to the woman that was willing to give it up. Solomon knew that someone who really understands the meaning of parental love puts the child's well-being ahead of her own and is willing to make any sacrifice to ensure the child's best interests. In current times, dissolution proceedings place judges in a similar position. In almost every divorce involving children, there are two people wanting the children. And judges have to choose which of two people will not only love the child, but will love the child best. Now, in the briefs in this case, it becomes pretty clear that there's two big issues. One is Ross's allegation of abuse, physical abuse of Lexi. And the other is Ross's abuse of his daughters by filling their heads with lies in an effort to turn Gayla's children against her. Now, let's turn first to this abuse that Gayla allegedly perpetrated against her daughter. When you read Ross's brief, without benefit of the trial, he has convicted Gayla of child abuse. And I think it's very interesting the way that it is cited in the brief. It says that the trial court balanced the physical abuse done by Gayla against his concerns that Ross had verbally, negatively campaigned against Gayla. That's what he's saying. Well, she beat the child. I only beat the mother to the child. But the very important fact is that Gayla never abused this child. And that has been crystal clear all along. Gayla has done this all along. Lexi has known this all along. She never accused her mother of hitting her and consistently said that she fell in the bathtub. Lexi's teachers who saw Lexi the next day and saw the bruises, she was a little girl, she was just being potty trained at that time, they were helping her to go to the bathroom and they saw the bruises. They said, Lexi, what happened to you? Lexi said, I fell in the bathtub. When Gayla came to pick up the child that afternoon, they said, what happened to Lexi? Gayla said, she fell in the bathtub. Without knowing what Lexi had told her teachers, Gayla told them the same thing that Lexi told them. Lexi's daycare teachers never had any questions whatsoever that Lexi had been abused. It was only when Ross saw Lexi a few days later that suddenly, this is abuse. Now, as I pointed out, there were three, and I believe only three, unbiased witnesses in this case. The psychologists that examined Gayla and Ross, the psychologists that examined the children, and the guardian ad litem whose job was to determine what was best for the children. It's interesting to hear what all three of those people say about these allegations of abuse. Dr. Alkov believes, and I'm quoting now, the allegations that Gayla maltreated her children should be scrutinized very closely as regards to their credibility. The guardian ad litem said she found no indication of parental abuse and only ongoing allegations from Ross. Dr. Clipper, who actually examined the children to determine these specific issues, says this, given the information and circumstances of a custody battle, it is incredible that DCFS did not consider the possibility of distortion. He also described the dispute as what seems plausible versus what seems to be an agenda to gain the upper hand in a custody battle. Now I would add to this court a fourth unbiased professional who has expressed his disbelief that Gayla struck Lexi. After a full trial on the merits in a criminal proceeding, Judge Brian Lewis found Gayla not guilty of abuse of Lexi. Is that in the record? I have asked the court to take judicial notice of that, and that motion was taken with the case. Okay. So that's something that's transpired rather recently. Correct. Very recently. Very, very recently. After the briefing was completed. I have filed a motion to take judicial notice of this. I would note that this court can take judicial notice of closely related proceedings. And Ms. Shanahan, what did you say was the outcome? Was it a bench trial or a jury trial? It was a bench trial. It took a full day before Judge Brian Lewis, and he found her not guilty, relying particularly on the fact that the daycare providers who saw Lexi the day after the fall supported Gayla's opinion. I pretty much am going to stand on my motion for you to take judicial notice. I would just note this court can take judicial notice of closely related proceedings, and I don't think you can get any more closely related than a criminal case which was instigated by a parent for the purposes of getting the upper hand in a custody case. Now, as I recall, the only real cooperation was that there was supposedly a statement made to a nurse or someone at the hospital. Well, there's a big, thick pile of hospital records. By the child, though. Yes, I agree. I know what you mean. And that's where, it's in the emergency room records, and Counsel for Ross has said that. I think that that's disputable, especially when you look at what the doctor that saw Lexi said. And essentially, not only at the emergency room, but at DCFS and everywhere, Lexi was extremely reluctant to talk about this. And if you notice, not only in the hospital records, but in the DCFS records, you have time after time after time. And Ross says that Lexi said, there is one line in an emergency room record that's several pages long, one line, that can be taken one of two ways. But certainly the doctor didn't say that. The only allegation is that, I'm trying to remember, I would ask you to look at that record, because it's formed in such a way that it's not really clear whether Lexi said or whether, and I think this is far more likely, given everything Lexi said to everybody else, whether somebody said to Lexi, now, your daddy says that this happened, is that right? This is in the DCFS records, this is in the hospital records, it's constantly Ross saying, Gail did this. But as I said, the guardian ad litem, whose job was to consider these children above all considerations, didn't believe it. The child psychologist who examined these children, whose sole purpose was to advise the court. I want you to assume that we're taking that out of the picture. Okay. Entirely. What's your argument that the court's ruling was against the manifesto without that consideration of abuse? Of the abuse by Gail? Okay. There is abuse in this case. It is abuse by Ross. Illinois courts have always been appalled by any attempt on the part of either parent to alienate the affections of the other. I've cited to you Minor v. Minor, which comes from 1849. You know, sometimes things are just so obvious and so apparent that you don't have to say them over and over again. And no court could have said it better than our Supreme Court said this. In Minor, the court said, It's child abuse. It is child abuse to fill your children's minds with lies about their parents, to make your children fear their parent. That's what happened here. There were three unbiased professionals in that courtroom, well, that examined these children. The reports are in the record. That looked at these children, and they repeatedly said that this is exactly what Ross did. All three professionals, the psychologists that examined Ross and Galen, the psychologists that examined Nicky and Lexie, and the guardian-athlete, all three of them found evidence that Ross and his mother had exerted extreme and unjust influence on both children, but especially on Nicky, because Nicky lived with Ross. Both Dr. Clifford and the guardian-athlete felt that the custody of the children should be awarded to Galen because of Ross' efforts to manipulate and alienate the children. Given the fact that all three of the only, the only unbiased witnesses in this case found that Ross has been manipulative in his attempts to alienate children from Galen, and because both the child psychologist and the guardian-athlete, whose sole job was to decide what was best for the children, felt that Galen would be the better parent because she would help the staff maintain and establish a relationship with Ross, should she be given custody. This decision is simply unreasonable and arbitrary. I want to go a little bit more in detail of the reports and the evidence. Dr. Althoff examined Ross and Galen. He noted that there was a lot of interference from Ross' parents. He noted that Galen had been psychologically, might have been psychologically abused by Ross in an effort to control, demean, and isolate her. He noted that Ross, even to him, just as soon as he walked in, he starts pointing out Galen's weaknesses and shortcomings, and he had an intense need to deny problems in his own past. He noted Ross' exceptional focus on Galen's issues, and he suggested that the focus was largely a function of the divorce proceedings. That is to say, he's saying Ross is bad-mouthing Galen in an effort to influence me in the custody proceedings. And he noted that that increases the likelihood that those statements were not accurate. Dr. Althoff concluded that due to Ross' mother's over-involvement in his life, much of Ross' parenting would be influenced by his mother. Now let's move on to Dr. Clipper. Dr. Clipper notes that Ross made negative comments about Galen in front of Lexi right there when he was examining him. He noted a lot of the things that Nikki told him. Nikki told him that her grandmother talked about the divorce a lot, and said really derogatory things about Galen, right in front of Nikki. He found Nikki very confused about her relationship with her mother. He noted many other things. They're all in my brief. The guardian ad litem was extremely disturbed by this little girl's responses. She found her to be one of the most disrespectful children towards her mother that I have ever had in my office. Ross has turned these children against their mother. If this judgment is allowed to stand, Gayla Litton is going to lose her children. Because Ross Litton will continue this campaign and completely turn both of these children against their mother. This should not stand. Thank you, counsel. Counsel? Is there any reason why we shouldn't take judicial notice of the apparent outcome of the abuse trial? Yes, I filed a response. Bottom line is it's irrelevant. Counsel? Please, the court. The respondent in closing argument expressly argued that the custody decision should be reserved until the criminal case has been resolved. The trial court did not follow that recommendation. Apparently they had heard enough. They had heard virtually the same evidence the trial court was going to hear. And they had reached their conclusion of what the correct decision was with respect to the evidence. In the divorce court, there is no requirement for proof beyond a reasonable doubt of all elements of an offense. There is nothing inconsistent with the trial court here finding that by preponderance of evidence or well proven that the abuse occurred. And a trial court finding that one of the elements of the offense was not proven beyond a reasonable doubt. There is nothing added by telling us that the evidence doesn't go beyond a reasonable doubt when there's plenty of evidence to show that by preponderance the abuse occurred. The standard for bringing the charge itself. The trial court in this custody proceeding though made no finding either way on that issue. No, they just said not guilty, not guilty. Well, I'm talking about in the custody case. I mean, an award of custody was made, but Judge Blier at no point said I believe that the abuse happened or I don't believe. We don't know what the trial judge. He said, having considered all of the statutory things, Ross is my choice. But implicitly, there is no implicit finding in there that he believed the abuse, right? I mean, he may have believed it didn't happen and still made the same rule. He could have thought it was something else. Bottom line is the trial court's decision in the criminal case is just irrelevant to whether or not the decision. Excuse me. It's dry in here. It's going around. It just doesn't add anything. Now, this case has been litigated and experted to death and it's been briefed rather thoroughly. My intention today was just to go over the reply brief, the things that I had a problem with and be available for questions. Opposing counsel argued that I said in my brief that the trial court balanced the physical abuse done by Gayla against the concerns that Ross had verbally, negatively campaigned against Gayla. If you will look at my brief, I said that the court could have found that Dr. Clipper didn't weigh those things. Because Dr. Clipper, a Ph.D. in psychology, decided to play medical detective and he came to a conclusion different than the two medical experts who evaluated the injuries to Lexi. On page two of the reply brief, there is a statement that Ms. Phillips, the DCFS investigator, was unconcerned that Gayla continued as Lexi's sole custodian for the next two years. There's no evidence of that in the record that I know of. She did close the case and it was turned over to the state attorney's office who did bring charges. On page five of that, of the reply brief, there's a claim the state's attorney brought charges based on Ross' self-serving accusation. That and the DCFS finding of abuse and two medical doctors who saw the child and pictures of the child and independently found that there was abuse. I mentioned earlier that the public, also on page five, the public prosecutor, the entire professional conduct rule 3.8 is reproduced. The charges to be brought should have probable cause. That's awfully close to the preponderance of evidence that you would expect in a civil court trying to determine the best interests of a child. Probable cause is the equivalent of preponderance of the evidence? No, it's close. Okay, go ahead. I'm not buying that, but go ahead. Now, on page six, speaking of my argument, Ross simply picks a few straight comments from the reports of Dr. Alcoff, Dr. Clifford, and Danielle Woodcock. In fact, what I took was their opinion, their opinions. And if all these experts knew all the facts that have been, or allegations that were put forth here today, they were incorporated into the opinions of those experts. And Dr. Alcoff, he found both are fit parents. Dr. Clifford, he decided that there was no abuse based on exactly the same evidence that Dr. St. Germain used to find that there was abuse. And his first opinion of what should be done is joint custody. He couldn't have thought that Ross was a horrible person. Joint custody was his first hope for the best interest of the children. Only after the parties could not agree did he, on one basis, after discounting the abuse allegation, said that Gail would be better. Woodcock, no question about it, she won Gail. No one's mentioned Sue Spurlock, the counselor to Nikki. Yes, she was paid by the lit, as was Woodcock, Clifford, and Alcoff. Professionals don't make up their minds and do their opinions based on who's paying them, if they're competent professionals. And Ms. Spurlock expressly said she was Nikki's counselor, she was on Nikki's side. And she has a strong opinion, as Woodcock did, but going the other direction and favoring Ross. Now, Gail Woodcock, as the court said, has high respect for her, so do I. This is one case where she had an obligation under Supreme Court Rule 907 to do certain things and certain duties. And she was, when she wrote up a report, she didn't know that two years earlier, an indicated finding of abuse existed against Gail with respect to Lexie. You're talking about the alleged fly swatter slash bathtub incident? Yes. She wrote in her original report that there was no indicated report. Gail Woodcock had not interviewed the DCFS investigator and had no idea that it occurred. Two years. After all the evidence was in, the court gave Mrs. Woodcock the chance to change her mind. And she didn't take that chance. She maintained her opinion the way it was, and the court didn't agree with her. The court heard all of the evidence of all of the witnesses, including these reports. And when the judge was done observing those witnesses and judging the veracity, he decided that based on all the evidence he had heard, including having seen the witnesses and judged their demeanor and decided who he wanted to believe, that Ross was in the better interest of the children to be in an extended family of Ross with his parents and his uncles and aunts and other extended family and friends rather than, and in the marital home, than to be in some amorphous place with the mother who was looking at that time for something to rent and marry him. And had plans to go to school and work and do things that she hadn't done in the four years of separation. The petitioner on page nine of the reply brief mentions that Ms. Furlock is neither specially educated nor impartial nor unbiased. She hasn't. Ms. Furlock has only a bachelor's degree in social work. Ms. I believe, Ms. Woodcocks is in political science. Both of these women are experienced people who know their minds and made a decision based on what they believed was right, knowing what they knew at the time they made their suggestions. The court decided that given all the evidence from all the people and all these reports that Ross was the better person to fulfill the best interest of the children. So I would ask that you affirm the trial court's decision. If there's some reason that you are uncomfortable with that, I'd ask you to please remand it with instructions and we'll have another hearing. But it would be best for this to be completed so the children can finally be settled in a place where they know where they're going to be. Thank you. Thank you, counsel. Counsel? This is Chet. When you asked about why you could not take judicial notice, counsel for Ross points out maybe why judicial notice might not weigh heavily on Gail's behalf. It doesn't explain any reason why it shouldn't be taken. It's a judicial order in a closely connected case. It gets sort of like the admissibility versus weight argument in evidence submitted to court. I strongly believe that you can take judicial notice of this and I would ask that you do. Justice Stewart, you noted that Judge Byron had no findings of fact whatsoever. He just said this is it. And you said maybe he discounted the allegations of abuse and came to this conclusion anyway. I would say that I can't imagine that any judge could come to this conclusion. If he said I am sure there is no abuse occurred and if the psychologist that examined the parents said that they saw this pattern of alienation by the father and if the psychologist that examined the children said that he saw this pattern of alienation by the father and that the mother should get the children and if the guardian ad litem, the eyes and ears of the court examines these children and says that there is a pattern of abuse of alienation that is programmed and recommends that the children be given to Gail and specifically notes that she will, pursuant to the statute, that she will encourage a relationship with Ross whereas all of the indication is that Ross will not encourage a relationship with Gail. That's my answer to that is that I just don't see how he could have reached that decision if he didn't. There was some discussion in your earlier argument about what the emergency room record says and in your reply brief, your reply brief, you say that it's this, quote, patient's father states that the patient told him that she was hit by her mother with a fly swatter, close quote. Is that what we were talking about in the emergency room report or was there something else? It's in my reply brief and particularly if I quoted it, I had the record then and I don't have the record now. I'm just trying to refresh your memory. I thought there was a statement to one other provider like a nurse or something that did say that the child stated something along those lines. That's what I was trying to recall. I don't think it is anywhere as clear as it has been alleged. We'll look at it. Two quick mentions of two people. Dr. St. Germain never laid eyes on Lexi. She looked at a picture of the bruises. You're going to see the bruises in the record. The pictures were taken several days after she fell when she first saw Ross. And as we all know, bruises kind of spread and grow. She never spoke to Lexi. She never saw Lexi. She was simply sent pictures. Sue Spurlock, who feels like she's qualified to give an opinion about what's right for Gaila's children, never met Gaila. Gaila called her, tried to get in touch with her. She asked Ross, she told Ross, she said, Gaila called me, should I call her back? And Ross said no. Ross's mother paid Sue Spurlock for several years of counseling. Sue Spurlock loses her job if she testifies against Ross. So I don't think Sue Spurlock, in addition to the other reasons I've mentioned in my brief, I don't think Sue Spurlock is anything close to an unbiased witness. I would just like to close by saying this. 2,000 years ago, three wise men appeared in Bethlehem and offered their wisdom to the parents of the Christ child. Three wise men, or I guess I should say wise persons, offered their wisdom to the trial court, but the trial court disregarded that unified opinion on what would be best for these children. Trial courts are not required to take the opinion of experts, but when there are three experts and they all say the same thing, it should not and cannot be disregarded. It simply cannot be in the best interest of Nikki and Lexi to be raised in a household where their mother will be vilified, reviled, dishonored, and humiliated, and in the short course, they will be programmed to completely abandon their mother. The trial court's award of custody to Ross is manifestly erroneous, and we would ask this court to reverse it. Thank you. We appreciate the briefs and arguments of counsel. We'll take the case under advisory.